[NOT FOR PUBLICATION NOT TO BE CITED AS PRECEDENT]
United States Court of Appeals
For the First Circuit
 No. 97-2356

 UNITED STATES,

 Plaintiff, Appellee,

 v.

 JOSE ARIZAGA,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Hctor M. Laffitte, U.S. District Judge]
 Before

Boudin, Circuit Judge,

Reavley, Senior Circuit Judge,and Lipez, Circuit Judge.

David W. Romn for appellant.
Jos A. Quiles-Espinosa, Senior Litigation Counsel, with whom Guillermo Gil, United States Attorney, and Camille Vlez-Riv, Assistant United States Attorney, were on the brief, for appellee.

March 11, 1999

LIPEZ, Circuit Judge. Jos Arizaga was convicted by a
jury, after a joint trial with three co-defendants, of conspiracy
to possess multiple kilograms of cocaine with intent to distribute,
and of two specific instances of cocaine possession with intent to
distribute, both occurring in the course of the conspiracy. On
appeal, Arizaga claims that the court erred in failing to grant a
new trial in light of allegedly newly discovered exculpatory
evidence. He also argues that he was deprived of effective
assistance of counsel at trial, and that the evidence was
insufficient to sustain his convictions. We affirm.
 I.
The indictment alleged that Arizaga and sixteen other
named conspirators were involved in a series of cocaine
transactions dating from November 1993 through July 1996 in which
cocaine was purchased in Puerto Rico and transported to the
mainland using a variety of methods. The government's case relied
primarily on the testimony of Luis Chvere, a central figure in
every drug transaction executed in the course of the conspiracy.
After being arrested in May 1995 in connection with an attempted
purchase of ten kilograms of cocaine, Chvere subsequently
testified as a government witness. A comprehensive description of
all the transactions in furtherance of the conspiracy may be found
in our opinion in United States v. Portela, Nos. 97-2353, 97-2354,
97-2355, slip op. 3-11 (1st Cir. Feb. 9, 1999). For the purposes of
resolving Arizaga's appeal, we describe only the transactions in
which he participated directly. "We recite the facts in the light
most favorable to the verdicts being appealed." United States v.
Shifman, 124 F.3d 31, 33 (1st Cir. 1997), cert. denied, 118 S. Ct.
1053 (1998).
In April 1995, Chvere traveled to Puerto Rico from his
home in Rochester, New York, in order to purchase a kilogram of
cocaine as a replacement for several kilograms of cocaine which he
had previously purchased but which had been interdicted by law
enforcement. Chvere's usual suppliers were unable to provide him
with any cocaine and indicated that the supply of cocaine was
scarce at that time. After several days, Chvere was approached by
Arizaga, who offered to procure a kilogram of cocaine. At some
point afterwards Chvere purchased a kilogram of cocaine from
Arizaga for $14,000. Unhappy with the quality of this cocaine,
Chvere resold it in Puerto Rico instead of transporting it back to
the mainland and reselling it there, which had been his usual
practice. The evidence of this transaction produced at trial
consisted solely of the testimony of Chvere.
On May 11, 1995, Victor Roldn-Flores informed Chvere of
an opportunity to purchase ten kilograms of cocaine. Since Chvere
did not have enough cash to complete the transaction, he attempted
to recruit several others to provide capital and share in the
purchase. He first spoke to Arizaga, who agreed to try to recruit
others to the venture. By the morning of May 12th, Arizaga had
raised enough money to buy one kilogram of the cocaine, and Arizaga
and Chvere together sought out Samuel Rivera-Maldonado, who agreed
to buy two of the ten kilograms. The three of them then met Roldn-
Flores, who was with William Santiago-Coln, and all five men went
to a Burger King in Isla Verde. Arizaga went in Rivera-Maldonado's
truck, in which the pooled money of all five buyers had been
stowed. Arizaga had contributed $13,000 to the pool. Roldn-Flores
recognized his supplier driving into the parking lot of the plaza
where the Burger King was located; Roldn-Flores went out into the
parking lot to speak to the supplier. Roldn-Flores then returned 
to the restaurant and asked Chvere and Rivera-Maldonado to go out
into the lot and get the money from the truck. The supplier was in
fact an undercover Drug Enforcement Administration agent, and all
five buyers were arrested. Arizaga was in the lavatory of the
Burger King when he was arrested. The evidence of this transaction
adduced at trial was the testimony of Chvere and of the two law
enforcement officers who had conducted surveillance inside the
Burger King during the sting operation.
After Chvere was released on bail, he decided to
cooperate with the government. Arizaga had been released later in
the day after his arrest on May 12, 1995, but he was rearrested in
July 1996 in light of inculpatory information provided to law
enforcement by Chvere. Arizaga was charged in three counts of the
indictment. Count One charged conspiracy to possess with intent to
distribute cocaine. Count Twelve charged him with possession with
intent to distribute one kilogram of cocaine in connection with the
April 1995 sale to Chvere. Count Fourteen charged him with
attempting to possess with intent to distribute ten kilograms of
cocaine in connection with the Burger King events in May 1995.
Arizaga was convicted of all three counts in a jury trial. Shortly
after conviction, Arizaga filed a pro se motion to dismiss his
trial counsel; his counsel then requested that he be allowed to
withdraw and the court granted this motion. Sentencing proceeded
with new counsel (David W. Romn), and Arizaga was sentenced to
concurrent terms of 60 and 121 months in prison followed by two
concurrent five year terms of supervised release, and a special
monetary assessment. This appeal followed.
 II.
On July 21, 1997, after trial but before sentencing,
Arizaga (represented by current counsel David W. Romn) filed a
motion for a new trial, based on trial counsel's alleged
ineffective assistance. This motion was denied by the court. On
August 20, 1997, Arizaga filed a renewed motion for a new trial
accompanied by a statement from Samuel Rivera-Maldonado, a co-
defendant who had pled guilty. Rivera-Maldonado's statement
indicates that
Mr. Arizaga . . . is completely innocent of
any wrongdoing in this case and had nothing to
do with the criminal acts charged against him.
To my knowledge, Mr. Arizaga . . . is
completely innocent of the charges against him
because he had nothing to do with criminal
acts described in the indictment in this case.

This motion was also denied by the court. Rivera-Maldonado's typed
statement is dated April 2, 1997, but the word "June" is typed on
the document, crossed out in ink, and the word "April" written by
hand in its place.
Federal Rule of Criminal Procedure 33 authorizes a new
trial "if required in the interest of justice." A Rule 33 motion
for a new trial based on newly discovered evidence will not be
allowed unless "the movant establishes that the evidence was: (i)
unknown or unavailable at the time of trial, (ii) despite due
diligence, (iii) material, and (iv) likely to result in an
acquittal upon retrial." United States v. Tibolt, 72 F.3d 965, 971
(1st Cir. 1995). If any of these four factors are missing, "then a
Rule 33 motion must be denied." United States v. Natanel, 938 F.2d
302, 313 (1st Cir. 1991). We review the denial of a motion for a
new trial for "manifest abuse of discretion." Tibolt, 72 F.3d at
972.
Even assuming arguendo the unavailability of Rivera-
Maldonado's statement and testimony at Arizaga's trial, the due
diligence of trial counsel, and the materiality of the new
evidence, we must ask whether this evidence was likely to result in
acquittal on retrial. There was no such likelihood. Attempts by one
defendant to take full responsibility for a crime after his guilt
has been established, or to exonerate a co-defendant, are common
and are properly viewed with skepticism. See United States v.
Benavente Gomez, 921 F.2d 378, 383 (1st Cir. 1990). Rivera-
Maldonado's statement is conclusory in nature and contains nothing
that might account for or seriously cast doubt upon the directly
contradictory testimony of Chvere or that of the police officers
present at the Burger King. Under such circumstances, we conclude
that the introduction of Rivera-Maldonado's testimony would not
have been likely to result in Arizaga's acquittal upon retrial. The
court did not abuse its discretion in denying the motion for a new
trial.
 III.
Arizaga contends that he was deprived of the effective
assistance of counsel because his trial counsel allegedly failed to
call Rivera-Maldonado as a witness, interview the manager of the
Burger King restaurant where the arrests were made (who allegedly
would have testified that Arizaga arrived separately from the other
defendants), present the government's videotape of the events
taking place in the parking lot of the Burger King (so as to
establish that Arizaga was not present in the parking lot), and
discover and present medical evidence of Arizaga's chronic
gastrointestinal illness (presumably so as to establish that
Arizaga was not necessarily simply hiding from the police in the
lavatory). Arizaga also alleges that counsel frustrated his right
to take the stand.
Ineffective assistance of counsel claims require the
defendant to show that counsel's performance was constitutionally
deficient and that the deficient performance prejudiced the
defense. Because both findings typically require the resolution of
factual issues by a trial judge, we have generally declined to
resolve such claims on direct appeal unless the record is
sufficiently developed to permit review of the claim. See United
States v. Berrios, 132 F.3d 834, 840 (1st Cir. 1998). The court
issued no findings as to trial counsel's performance in rejecting
Arizaga's two Rule 33 motions. We have no indication of what
tactical considerations may have motivated counsel's decisions not
to call Rivera-Maldonado or present the videotape, nor do we have
evidence of the extent of counsel's discovery efforts. The
affidavit of counsel in the record indicates only that counsel
informed Arizaga of his right to testify. Therefore, the record
before us is inadequate to resolve the ineffective assistance of
counsel claim raised by Arizaga, and we decline to address it.
 IV.
Arizaga moved for a judgment of acquittal, pursuant to
Federal Rule of Criminal Procedure 29, at the close of the
government's case and again at the close of all the evidence. Rule
29 allows for entry of a judgment of acquittal "if the evidence is
insufficient to sustain a conviction." Arizaga argues that the
evidence against him was insufficient because he "was convicted
solely on the uncorroborated accomplice testimony of Luis
[Chvere], given more than a year after the events charged in the
indictment." Arizaga claims the delay and the alleged lack of
corroboration make Chvere's testimony "facially incredible" and
"unbelievable as a matter of law." In assessing a sufficiency
challenge, "we review the record to determine whether the evidence
and reasonable inferences therefrom, taken as a whole and in the
light most favorable to the prosecution, would allow a rational
jury to determine beyond a reasonable doubt that the defendant was
guilty as charged." United States v. Alicea-Cardoza, 132 F.3d 1, 5
(1st Cir. 1997) (internal quotation marks omitted).
"[A] conviction based solely upon the uncorroborated
testimony of an accomplice can be upheld, as long as the jury is
properly instructed and the testimony is not incredible as a matter
of law." United States v. Hernndez, 109 F.3d 13, 15 (1st Cir.
1997). In this case, "[t]he judge gave complete and correct
instructions detailing the special care the jury should take in
assessing the testimony," United States v. Ortiz-Arrigoitia, 996
F.2d 436, 438-39 (1st Cir. 1993), and Chvere's testimony was not
"incredible or insubstantial on its face," United States v. Aponte-
Suarez, 905 F.2d 483, 488 (1st Cir. 1990). Chvere's testimony as
to the May transaction was in fact substantially corroborated by
the testimony of the two police officers who provided surveillance
at the Burger King and participated in the arrests. Moreover,
nothing about the delay between the time of Chvere's arrest and
the time at which he implicated Arizaga while cooperating with the
government (at most, fourteen months) made his testimony incredible
as a matter of law. A rational juror could have relied upon it to
find Arizaga guilty beyond a reasonable doubt.
Affirmed.